Wright, J.
The defendant seeks to avoid the recovery of the value of a parcel of Canada bank bills of $1,953, delivered to him -for the purposes of redemption, on the ground that the transaction was in violation of the statute of April 13, 1853, concerning “ foreign bank notes; ” also, of the statute of April 20, 1830, which declares it unlawful for any person to pass or circulate foreign bank bills under the denomination of five dollars; and of the third section of the statute of May 7, 1839, which declares it unlawful for any bank, &c., within this State, directly or indirectly, to lend or pay out for paper discounted or purchased by them, any bank bill, &c., which is not received at par by such bank, &c., for debts due to such bank, &c. Of course, if there has been an intentional violation of the provisions of either of these statutes by the plaintiff, or as a banking association, it has been guilty of any of the prohibited acts, the court will not aid the plaintiff, in enforcing payment for the bank notes delivered to and received by the defendant.
The act of 1853, declares it unlawful for any banking association or individual banker, to receive from any corporation, association or person, foreign bank bills at a greater rate of discount than is, or shall be, at the time fixed by law for the redemption of the bills of the banks of this State at their agencies. It is further declared unlawful for such banking association or banker, to issue, utter or circulate as money, within this State, any foreign bank bill or note, or to procure or receive any such bank bill or note with intent to issue, utter or circulate the same as money within this State. The act, however, especially provides that nothing contained therein shall be construed to prohibit any banking institution .from *166 receiving and paying out such foreign bank bills as they shall receive at par, in the ordinary course of their business; or to prohibit such banking institution from receiving foreign notes from their dealers and customers, in the regular and usual ' course of their business, at a rate of discount not exceeding that which is, or shall be, at the time fixed by law for the redemption of the bills of the banks of this State at their agencies; or from obtaining from the corporations, associations or individuals, by which or by whom such foreign notes were made, the payment or redemption thereof. The prohibitions of the act, therefore, are against a banking association or banker, procuring or receiving foreign bank bills at a greater rate of discount than one-quarter of one per cent, the rate fixed by law for the redemption of the bills of the banks of this State at their agencies; and against issuing, uttering or circulating as money within this State, such foreign bank notes. Banking institutions are not prohibited from receiving and paying out foreign bank bills, if received by them at par, in the ordinary course of their business; nor from receiving foreign notes from their dealers and customers, in the regular and usual course of their business, at a rate of discount, not exceeding one quarter of one per cent, and obtaining payment dr redemption thereof from the banks issuing them. (Laws of 1853, chap. 223.) The foreign bills delivered to the defendant, were all received by the plaintiff in the ordinary course of business, part at a discount of one-fourth of one per cent, and part on deposit at par. It therefore violated no law in receiving the bills. The act expressly legalizes such dealing in foreign bank notes. The bills were as much lawful property in the plaintiff as the specie in its vaults. Being the owner of the bills, the law prohibited the'bank from issuing, uttering or circulating them as money within this State; but those received at par, in the ordinary course of business; they could pay out again; and those received from their dealers and customers, in the regular and usual course of business, at the discount of one-quarter of one per cent, they could lawfully send home for redemption. As to- *167 the whole, those received at par, and those received at one fourth per cent discount, they could obtain payment or redemption thereof from the banks issuing them. The question is, whether the transaction amounted to an issuing, uttering or circulating the foreign notes as money, within this State, by the plaintiff; or whether the notes were delivered to the defendant for the purpose of effecting a redemption of them. I think that the facts established clearly sustain the latter theory. The defendant agreed with the plaintiff to take from the latter, for the purposes of redemption, all the Canada bank bills the plaintiff should deliver to him, at one-fourth of one per cent, and at the time of such delivery, pay for them in bills of the banks of the State of New York, or in a draft upon New York at seventeen days, without grace or acceptance. Under such agreement, the bills were delivered to the defendant: the defendant’s drafts on bankers in New York, at seventeen days, without grace or acceptance, taken for the sums; and the defendant sent the bills to Canada for payment or redemption.
• The agreement was not that the defendant should redeem the bills himself; but that it was contemplated by the parties that the redemption should be effected by sending the bills home, is manifest from the fact that the defendant was not an agent of the Canada banks for the redemption of their -bills, and that he did, in fact, send home those bills. The transaction made the defendant the plaintiff’s agent to effect the redemption by sending the bills home, for which the defendant received his pay in the one-fourth per cent discount allowed to him on the bills. It is conceded that the plaintiff itself might lawfully have returned the bills home for redemption, and if so, it could employ an agent to effect the object. In this view of the case, the acts and intentions of the parties were entirely legal, or at least there was no violation by the plaintiff, of the statute of 1853.
The transaction was not a violation by the plaintiff of the third section of the act of 1839, concerning foreign bank notes. By that section banking institutions within this state are prohibited from lending or paying out for paper discounted *168 or purchased by them any bank bill or note not received at par by them for debts due to such institutions. (Laws of 1839, chap. 355, § 3.) The transaction cannot be tortured into a loan or purchase of the drafts of the defendant with the Canada bills. The bills had been lawfully received by the Buffalo City Bank, and it had a right to send them home for redemption, and to deliver them to a third person for that purpose, taking from him, at the time, an equivalent. It took a time draft which was not an equivalent. It was an illegal act.in the defendant to issue it, and it could not be collected from him. He still owed for the bills. The plaintiff was not at defendant’s counter purchasing paper. It was there with its packages of bills to be sent home for redemption. This is the aspect in which the transaction is to be viewed. When an innocent construction may be fairly given to the acts of a party, we are not to strain after a construction that shall impute a guilty violation of a statute.
By the act of April 20, 1830, it was declared unlawful for any person to pass, circulate or receive in payment within this state any foreign bank note under the denomination of five dollars.. (Laws of 1830, chap. 295.) This act has since been repealed, but it was in force at the time of the transaction between the parties. (Laws of 1855, chap. 93.) A portion of the bills in the packages delivered to the defendant were under the denomination of five dollars; and it is urged that the plaintiff’s act amounted to a violation of this statute. But I cannot perceive that the plaintiff is chargeable with doing either of the prohibited acts. It is expressly proved that the. bank did not receive the small bills in payment. Nor did it pass or circulate them within the meaning of the act. It simply upheld the law by getting these small bills out of circulation and out of the state, in the only legitimate way in which it could be done.
The act of 1850, chap, 251, prohibited banking associations and individual bankers from issuing time drafts. It is enough to say on this point that the defendant only violated this law Sacketts Harbor Bank v. Codd, 18 N. Y., 240.)
*169 I cannot perceive, therefore, that the plaintiff has been guilty of violating any statute. In the Sacketts Harbor Bank v. Codd, it was held to be no offence for a bank or banker having lawfully received foreign notes, to even sell them to another bank or banker at any rate of discount, providing the transfer is not with a view to their circulation in this state. The prohibition is only upon the bank or banker buying at a greater than the legal discount. Accordingly when one bank drew a bill of exchange in favor of another bank in payment of foreign bank bills purchased by the latter at more than legal discount, for the purpose of sending them home for redemption, it was held that there was no defence to an action upon the bill. The contract not being void as against the seller, and the security not being of a prohibited character, there is nothing which the seller is required to disaffirm, and he may recover upon the instrument itself, and is not obliged to go upon an implied assumpsit for the value of the bills sold. In the present case which was an action against the same defendant, there was no violation of any statute by the plaintiff, and if the transaction be characterized as a sale of the foreign bills with the view of having them sent home for redemption and not to have them circulated in the state, the contract would not be void as against the seller. The penalty of issu ■ ing the time drafts is denounced upon the defendant alone.
' The plaintiff may sue in disaffirmance of the illegal part of the contract, and recover upon an implied assumpsit the value of the bills as measured by the lawful rate of discount agreed on, being the amount of the drafts canceled and given up at the trial.
The judgment of the Supreme Court should be affirmed.
All the judges concurring,
Judgment affirmed.